United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 5, 2003**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

_____

m 01-11549

_____

DENISE ARGUELLO, ET AL.,

Plaintiffs,

DENISE ARGUELLO AND ALBERTO GOVEA,

Plaintiffs-Appellants,

VERSUS

CONOCO, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

Before SMITH, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Denise Arguello and Alberto Govea appeal (1) a judgment as a matter of law ("j.m.l.") on their claims of race discrimination in violation of 42 U.S.C. § 1981 and (2) the denial of their claims for injunctive relief under 42 U.S.C. § 2000a. Arguello and Govea, both of whom are Hispanic, entered a store owned by Conoco, Inc. ("Conoco"), intending to purchase gasoline and other items. There was a heated

confrontation, during which the employee made several racially derisive remarks. Arguello and Govea allege that they were deprived of their ability to enter into a contract on non-discriminatory terms as prohibited by § 1981. The jury decided for plaintiffs, but the district court granted Conoco's motion for j.m.l. under FED. R. CIV. P. (50)(b). *See Arguello v. Conoco, Inc.*, 2001 U.S. Dist. LEXIS 18471 (N.D. Tex. Nov. 9, 2001) (No. 397-CV-0638-H). Finding no error, we affirm.

I.

Arguello and Govea stopped with their family at a Conoco store. After Arguello's husband pumped gas into her car, Arguello and Govea (her father) went inside to pay for the gas and buy some beer. As they stood in line, Cindy Smith, one of the two clerks on duty, waited on other customers. Arguello testified that Smith was rude to her when she reached the counter and that her demeanor was less friendly than it had been with the customers she had previously served. After Arguello presented her credit card as payment, Smith requested identification. Arguello testified that Smith singled her out by demanding that she provide identification; Smith contends that she requested identification because Arguello was attempting to buy beer.

Arguello, an Oklahoma resident, presented Smith with her valid Oklahoma driver's license. Smith initially refused to accept it, claiming she could not take an out-of-state license, but she eventually accepted it and completed the transaction. During Arguello's purchase, Govea became increasingly frustrated with the manner in which Smith was treating his daughter. Consequently, he left the beer he had intended to purchase on the counter and walked out of the store.

After Smith completed Arguello's sale, the tension between them escalated into a confrontation. Arguello testified that Smith began shouting obscenities at her and making racially derogatory remarks. Arguello began to leave with her purchase, but realized that she had the wrong copy of the credit card slip and approached the counter again. After another argument, Arguello and Smith exchanged copies. As Arguello walked away the second time, Smith shoved a six-pack of beer off the counter and onto the floor.

Plaintiffs testified that after Arguello left the store, Smith began screaming racist remarks over the intercom. At the same time, Smith laughed at Arguello and her family and made several crude gestures. Govea and other family members telephoned Conoco from a payphone outside the store to lodge a complaint. During that telephone conversation, the Conoco official indicated that he wanted to know the name of the clerk in question. When Govea attempted to re-enter the store to determine Smith's name, Smith locked him out while laughing and making crude gestures.

Arguello and Govea sued Conoco under 42 U.S.C. §§ 1981 and 2000a.[1] The jury found for plaintiffs on the § 1981 claim and awarded

---

[1] As initially filed, the suit included claims by various additional plaintiffs alleging that Conoco was in violation of §§ 1981 and 2000a and state law for subjecting minority customers to substandard service and racially derogatory remarks. The district court dismissed or granted summary judgment for defendants on all claims. On appeal, a panel of this court reinstated and remanded for trial the claims raised by Arguello and Govea in this appeal, but affirmed the rejection of all other claims and plaintiffs. *See Arguello v. Conoco, Inc.*, 207 F.3d 803, 813 (5th Cir. 2000).

compensatory and punitive damages. The court granted j.m.l., finding that the record provided no basis upon which a reasonable jury could conclude that plaintiffs were prevented, on a discriminatory basis, from entering into a contractual relationship in violation of § 1981.

## II.

We review a j.m.l. *de novo*. *Coffel v. Stryker Corp.*, 284 F.3d 625, 630 (5th Cir. 2002). A j.m.l. is appropriate only where "there is no legally sufficient basis for a reasonable jury to find for [a] party." FED. R. CIV. P. 50(a)(1); *accord Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 139 (2000). Thus, a motion for j.m.l. in a jury case is a challenge to the sufficiency of the evidence supporting the verdict. *Flowers v. S. Reg'l Physician Servs.*, 247 F.3d 229, 235 (5th Cir. 2001).

In assessing the legal sufficiency of the evidence, we consider the entire trial record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor. *Burch v. Coca-Cola Co.*, 119 F.3d 305, 313 (5th Cir. 1997). An issue is properly submitted to the jury where there is a conflict in substantial evidenceSS"evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Boeing Co. v. Shipman*, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), *overruled on other grounds*, *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997) (en banc).

To succeed on a § 1981 claim, a plaintiff must establish "(1) that she is a member of a racial minority; (2) that [the defendant] had intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute. *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001). The first element is not disputedSSall parties concede that Arguello and Govea are Hispanic. Further, the testimonial and other evidence provides a basis for concluding that Smith subjected Arguello to substandard service. In conjunction with that evidence of maltreatment, the testimony regarding the racially charged nature of Smith's comments sufficed to create a jury question regarding whether Smith intentionally discriminated against plaintiffs on the basis of race. Therefore, this case turns on the third element, namely, whether Smith's conduct implicated rights guaranteed by § 1981.

## A.

Section 1981 does not provide a general cause of action for race discrimination.[2] Rather, it prohibits intentional race discrimination with respect to certain enumerated activities.[3] At issue here is plaintiffs' ability "to make and enforce contracts" on nondiscriminatory terms.

---

[2] *Garrett v. Tandy Corp.*, 295 F.3d 94, 100 (1st Cir. 2002); *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001), *cert. denied*, 535 U.S. 1017 (2002); *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1118 (10th Cir. 2001).

[3] 42 U.S.C. § 1981(a) provides that

[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

To establish a deprivation of § 1981 rights in the retail context, the plaintiff must demonstrate "the loss of an actual, not speculative or prospective, contract interest."[4] An allegation of "the mere possibility that a retail merchant would interfere with a customer's right to contract in the future" is insufficient to support recovery under § 1981. *Morris*, 277 F.3d at 752 (collecting cases). Instead, the plaintiff "must offer evidence of some tangible attempt to contract" that in some way was "thwarted" by the defendant. *Id*.

The law in this circuit for § 1981 claims in the *retail* context is established by *Morris*. There, this court plainly stated the rule that "where a customer has engaged in an actual attempt to contract *that was thwarted by the merchant,* courts have been willing to recognize a § 1981 claim." *Morris*, 277 F.3d at 752 (emphasis added.) The *Morris* court cited with approval, *inter alia*, *Henderson v. Jewel Food Stores, Inc.*, 1996 U.S. Dist. LEXIS 15796 (N.D. Ill. Oct. 23, 1996) (No. 96-C-3666), as "holding that 'a § 1981 claim must allege that the plaintiff was "*actually prevented, and not merely deterred*, from making a purchase or receiving service after attempting to do so.'"" *Morris*, *id.* (emphasis added). The *Morris* court summarized its holding by stating that "Morris must offer evidence of some tangible attempt to contract with Dillard's during the course of the ban, which could give rise to a contractual duty

between her and the merchant, *and which was in some way thwarted*." *Id.* (emphasis added).[5]

Govea cannot make that showing. Although his decision to abandon his purchase resulted from Smith's mistreatment of his daughter, Smith did not actually interfere with an attempted purchase. According to Govea's own testimony, he voluntarily set the beer on the counter and left without trying to buy it. Consequently, there is no basis on which a reasonable jury could conclude that Smith prevented Govea from making a purchase. Nor can Smith's later conduct in locking him out of the store support a claim under § 1981, because his subsequent attempts to gain entry into the store were, again by his own admission, not to buy anything but to determine Smith's name so he could provide it to a Conoco representative.

B.

Arguello likewise cannot establish interference with an actual contract interest. Her claim must fail, because she successfully completed the transaction.[6] Having received

---

[4] *Morris*, 277 F.3d at 751-52; *see also Bellows v. Amoco Oil Co.*, 118 F.3d 268, 275 (5th Cir. 1997) (denying recovery under § 1981 because plaintiff failed to introduce evidence that defendant actually interfered with the contract).

[5] At least one circuit has embraced *Morris*, and none has questioned it. In *Garrett*, 295 F.3d at 100-101, the court held that "to satisfy the foundational pleading requirements for a suit under section 1981, a retail customer must allege that he was actually denied the ability either to make, perform, enforce, modify, or terminate a contract, or to enjoy the fruits of a contractual relationship, by reason of a race-based animus."

[6] There was some question whether Arguello intended to purchase the beer left behind by her father when he exited the store. Arguello testified that she had expected Smith to ring up her father's beer along with her purchases. She asserts that, absent Smith's offensive behavior, she would have

(continued...)

4

all she was entitled to under the retail-sales contract, she cannot demonstrate any loss recoverable under § 1981.[7]

### 1.

Plaintiffs argue for a broader interpretation of the § 1981 right to "make and enforce contracts" on equal terms such that it would cover conduct occurring after the consummation of a retail-sales contract. They note that 42 U.S.C. § 1981(b), enacted as part of the Civil Rights Act of 1991, extends the reach of § 1981 by defining the term "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

This provision was enacted as a direct re-

sponse to the narrow view of § 1981 expressed in *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989). The enactment of § 1981(b) was an explicit rejection of *Patterson*, in which the Court had refused to impose liability for discriminatory conduct occurring after the formation of an employment contract. The new provision displaced *Patterson*'s understanding of § 1981 by expanding the statute's reach to "all phases and incidents of the contractual relationship." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 306-07 (1994).

Arguello and Govea correctly observe that under § 1981, the "making" of a contract must include the opportunity to enter into negotiations on equal terms. That much was true even before the 1991 modification of the statute. Plaintiffs go further, however, and argue that in light of Congress's response to *Patterson*, the statute should be read to impose liability for racial discrimination or harassment occurring after the formation of any contract.

There is a significant distinction, however, between employment agreements and retail transactions. A contract for employment involves a continuing contractual relationship that lasts for the duration of the agreement. As a result of the 1991 amendments, the right to enjoy the benefits of that relationship on a nondiscriminatory basis remains enforceable under § 1981 so long as the relationship continues.

In the retail context, by contrast, there is no continuing contractual relationship. Instead, the relationship is based on a single discrete transactionSSthe purchase of goods.[8] There

---

[6](...continued)
purchased the beer in a second, separate transaction.

Irrespective of whether Arguello intended to make the purchase, the only action she took with respect to the beer was to slide it across the counter nearer to her purchases after her father left the store. After she completed her purchase, it was obvious that she had not bought her father's beer. Nevertheless, she did not tell Smith that she desired to purchase it, and she took no other action that would indicate that she intended to do so. Her conduct therefore did not constitute an actual attempt to contract and provides insufficient support for a claim under § 1981.

[7] *Cf. Hampton*, 247 F.3d at 1118 ("We are aligned with all the courts that have addressed the issue that there must have been interference with a contract beyond the mere expectation of being treated without discrimination while shopping.").

---

[8] A sale is defined as a contract between two
(continued...)

fore, the appropriate comparison is not the application of § 1981 during the period in which an employment contract is in force. Rather, what Arguello and Govea are claiming in the retail context is akin to the use of § 1981 to enforce rights under an employment contract that has already expired.

2.

The remaining cases Arguello and Govea cite for the proposition that a § 1981 plaintiff may recover despite having successfully completed his purchase fall into two broad categories. The first group involves discriminatory service in restaurants and clubs. These cases are easily distinguishable, because dining at a restaurant generally involves a contractual relationship that continues over the

course of the meal and entitles the customer to benefits in addition to the meal purchased.[9] Restaurants are, in that respect, significantly different from retail establishments.

The second category is cases involving discriminatory prepayment or check-writing policies.[10] There, the plaintiff does not have to demonstrate inability to contract, because discriminatory contractual terms violate § 1981 even if parties willingly enter into the contracts.[11] The plaintiff is able to show the loss of an actual contractual interest merely by

---

[8](...continued)
parties involving the transfer of property in consideration of the payment of a certain price in money. BLACK'S LAW DICTIONARY 1337 (6th ed. 1990); *Grinnell Corp. v. United States*, 390 F.2d 932, 947-48 (Ct. Cl. 1968)(citing *Comm'r of Internal Revenue v. Brown*, 380 U.S. 563, 571 (1965); *see also Eusco, Inc. v. Huddleston*, 835 S.W.2d 576, 579 (Tenn. 1992) ("The elements necessary to constitute a sale are (1) a transfer of title or possession, or both of (2) tangible personal property, for a (3) consideration.") (citation and internal quotation marks omitted); *Berger v. Alaska*, 910 P.2d 581, 586 (1996) (Alaska 1996) ("A sale is the payment of money by a buyer to a seller in exchange for title and possession of property."); *Youngblood*, 266 F.3d at 854 ("[T]he key is whether any contractual duty remained after [plaintiff] made his purchase. Once [he] paid the cashier and received [his purchase] . . ., neither party owed the other any duty under the retail-sales contract.") In the retail context, the exchange of goods for payment occurs simultaneously, and thus any contractual obligations are quite limited in duration.

---

[9] *See McCaleb v. Pizza Hut of Am., Inc.*, 28 F. Supp.2d 1043 (N.D. Ill. 1998) ("[Pizza Hut] failed to provide [the customers] the full benefits of the contract in that, among other things, they failed to provide [the customers] with the proper utensils and created a disturbing atmosphere in which to eat."); *Charity v. Denny's, Inc.*, 1999 LEXIS 11462, at *11 (E.D. La. 1999) ("[I]t could reasonably be said that a customer who enters a restaurant for service is contracting for more than just food . . . . Dining in a restaurant includes being served in an atmosphere which a reasonable person would expect in the chosen place.").

[10] *Hill v. Shell Oil Co.*, 78 F. Supp.2d 764 (N.D. Ill. 1999) (holding that customers could proceed with § 1981 claims despite the fact that they completed their purchases, because the gas station had a discriminatory prepayment policy); *Hill v. Amoco Oil Co.*, 2001 U.S. Dist. LEXIS 3082 (N.D. Ill. Mar. 19, 2001) (No. 97-C-7501) (same); *Buchanan v. Consol. Stores Corp.*, 125 F. Supp.2d 730 (D. Md. 2001) (holding that customers could proceed with § 1981 claim based on discriminatory check writing policy).

[11] According to § 1981(a), read in conjunction with § 1981(b), the right to make and enforce contracts includes the right to enjoy "benefits, privileges, terms, and conditions of the contractual relationship" on a nondiscriminatory basis.

6

demonstrating that he was party to a discriminatory contract.

In this case, however, there are no allegations of discriminatory contractual terms. Arguello paid the same price for her purchase as any other customer would have, and she was not required to use a nonpreferred payment method. Each of the incidents of the contract was identical to that which would apply to any other customer. When one views Arguello's claim in this light, it is apparent that her only complaint is Smith's offensive conduct. Egregious as that conduct may have been, it neither prevented the formation of a contract nor altered the substantive terms on which the contract was made.

### III.

Arguello and Govea appeal the denial, for want of standing, of their claim for injunctive relief under § 2000a. We review questions of standing *de novo*. *Castillo v. Cameron County*, 238 F.3d 339, 347 (5th Cir. 2001).

"It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (citations omitted). If a litigant is unable to establish standing, he may not seek relief on behalf of any party. *James v. City of Dallas*, 254 F.3d 551, 563 (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

In addition to the general standing requirements of injury in fact, causation, and redressability, a litigant seeking injunctive relief must demonstrate "that [he is] likely to suffer future injury by the defendant and that the sought-after relief will prevent that future injury." *Id*. Although Arguello and Govea allege past wrongful conduct by Conoco, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Lyons*, 461 U.S. at 102 (citation and internal quotation marks omitted). Moreover, if Arguello and Govea have no cause of action under § 1981, they have no closer relationship to future conduct than does any member of the general public.

AFFIRMED.[12]

---

[12] Plaintiffs challenge the exclusion of evidence of complaints of racial discrimination by other Conoco employees at other Conoco stores. The excluded evidence, however, would have no impact on our disposition of their substantive claims, and, as we have explained, they have no standing to pursue an injunction.