United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 17, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 02-51299

Summary Calendar

---

ADELL A DANIELS; OTIS N DANIELS; JENCY VALIENTE; COREY
ANDERSON

Plaintiffs - Appellants

v.

ADVANTAGE RENT-A-CAR INC

Defendant - Appellee

---

Appeal from the United States District Court
for the Western District of Texas, Austin
No. A-01-CV-856-§

---

Before KING, Chief Judge, and EMILIO M. GARZA and BENAVIDES,

Circuit Judges.

PER CURIAM:[*]

Plaintiffs-Appellants Adell Daniels, Otis Daniels, Jency

Valiente and Corey Anderson appeal the district court's grant of

summary judgment in favor of Defendant-Appellee Advantage Rent-A-

Car on Plaintiffs' claims of unlawful discrimination in violation

of 42 U.S.C. §§ 1981 and 1982.  For the following reasons, we

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

AFFIRM.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Facts

On December 20, 2002, Plaintiffs Adell and Otis Daniels, a black couple, arrived at Advantage Rent-A-Car location 103 seeking a rental car. Mr. and Mrs. Daniels had been involved in an automobile accident, and needed a temporary replacement for their own car. The rental was arranged for and paid by the Danielses' insurance company.

Customer service representative Michelle Kamenicky asked Mr. and Mrs. Daniels for a credit card to cover a deposit for their rental. Mr. Daniels provided Ms. Kamenicky with a debit card. On regular, non-insurance rentals paid for with a debit card, Advantage requires a $200 deposit. Advantage asks for only a $50 deposit for insurance rentals, however. Ms. Kamenicky told Mr. Daniels that the deposit was $200, since he was paying with a debit card. At this point, Mr. Daniels provided Ms. Kamenicky with a different debit card, which was tied to his Merrill Lynch account.

Ms. Kamenicky swiped the card and informed Mr. Daniels that it had been declined. As Mr. Daniels's account resources exceeded $200 at that time, his card should not have been declined. In any event, Ms. Kamenicky requested another credit card or cash. Mr. Daniels, at this point, informed Ms. Kamenicky

2

that the Danielses' insurance company had told them the deposit would only be $50.  Advantage's District Manager Sharon Slonaker intervened, and she told Ms. Kamenicky that only $50 was required for insurance rentals.  Mr. Daniels paid $50 in cash.

Mr. and Mrs. Daniels were assigned a Hyundai Accent at a rate of $21.74/day.[1]  Mrs. Daniels found the Accent to be too small and asked for a Ford Escort.  The Accent is classified by Advantage as an "economy" car, and the Escort is a "compact" car. Advantage charges different rates for these different classes of cars.  Nonetheless, Advantage employees told Mr. and Mrs. Daniels that they could exchange the Accent for an Escort at Advantage's 107 location at no extra cost, if they so desired.

Mr. and Mrs. Daniels decided to exchange the Accent, so they went to location 107.  At this new location, Mr. and Mrs. Daniels waited in line behind Kathryn Burke, a white woman.  Ms. Burke, like Mr. and Mrs. Daniels, was seeking an insurance rental.  The terms of Ms. Burke's rental had been previously negotiated by Advantage and Ms. Burke's insurance carrier, Allstate Insurance.

When Ms. Burke reached the front of the line, the customer service representative, Jeff Davis, asked for her credit card. Ms. Burke told Mr. Davis that her credit limit had been reached. Mr. Davis responded that he was not going to charge her credit

---

[1]     Advantage has negotiated different rental rates with different insurance companies.  The Danielses' rental rate was set by an agreement between Advantage and Charter Group.

3

card, and that it was only for security purposes. Mr. and Mrs. Daniels, as previously noted, had been charged a $50 deposit, and, upon seeing that Ms. Burke was not required to pay a deposit, Mr. Daniels called Ms. Sloanaker at location 103. Ms. Sloanaker explained that Ms. Burke should have been charged a $50 deposit, in accordance with company policy. After getting off the phone with Mr. Daniels, Ms. Sloanaker immediately called Mr. Davis, informed him of his mistake, and asked him to get a deposit from Ms. Burke if she was still in the store.

Company policy regarding insurance rentals before October 30, 2000, was to swipe the customer's credit card and keep the card number and customer information on file, rather than charging a $50 deposit to the credit card. Mr. Davis did not know the company's policy had changed because he had been working at the company's telephone reservation center when the policy went into effect. Mr. Davis was subsequently reprimanded for not obtaining a $50 deposit from Ms. Burke.

Ms. Burke was given a Chevrolet Cavalier, a compact car, at a rate of $19/day.[2]

When Mr. and Mrs. Daniels returned to the line, Mr. Davis was helping Jency Valiente, a Hispanic woman, and Corey Anderson, a black man. Ms. Valiente was renting a car for the use of both herself and Mr. Anderson. Theirs was a walk-up retail rental,

---

[2]     This rate had been set by a prior agreement between Advantage and Allstate Insurance.

4

rather than an insurance rental.  As a security measure, Advantage requires retail renters to produce a major credit card in the renter's name.  Advantage's policy is to charge retail customers the amount of the rental plus a $200 refundable deposit.

Mr. Davis asked Ms. Valiente for a credit card.  As with Mr. Daniel's card, Ms. Valiente's card had adequate funds to pay the deposit.  When Mr. Davis swiped Ms. Valiente's card, however, he announced that it had been declined.  Ms. Valiente next presented her father's debit card, and told Mr. Davis that he could call her father to get authorization for its use.  Mr. Davis told Ms. Valiente that this was against company policy.  Eventually, Ms. Valiente called her mechanic, who brought $200 cash for the deposit.  After much convincing, the location manager, Victor Medina, agreed to take the cash.  This was against company policy; Advantage normally required authorization for the full amount of a retail rental plus the $200 deposit on a credit card.

Ms. Valiente, like Mr. and Mrs. Daniels, was given a Hyundai Accent.  For this, she was charged $23.99/day.[3]  As it turned out, the Accent's wheels were improperly aligned.  When Ms. Valiente reported the problem to location 107, she was told that

---

[3]     Walk-up rental rates constantly fluctuate.  The rates are set by Advantage's "rate analysts" based on what is happening in the market.  When retail customers rent cars from Advantage, customer service representatives access the current rate on their computers.

the location had no other economy cars to rent to her. Ms. Valiente and Mr. Anderson called another Advantage location, and this location agreed to trade the defective car for one with proper alignment.

## B.   Procedural History

Plaintiffs Mr. and Mrs. Daniels, Ms. Valiente, and Mr. Anderson brought suit against Advantage for racial discrimination in violation of 42 U.S.C. §§ 1981, 1982, and 2000a. After the close of discovery, Advantage filed a motion for summary judgment.

The district court granted Advantage's motion. First, the district court found that Plaintiffs' § 2000a claim failed because the statute covers only places of "public accommodation," and rental car establishments do not fall into this category. Second, the district court found that Plaintiffs' § 1981 and § 1982 claims failed because Plaintiffs had not provided sufficient evidence showing that Advantage's proffered legitimate, nondiscriminatory reasons for the allegedly unequal treatment were pretextual.

Plaintiffs timely appealed the district court's grant of summary judgment on their claims under § 1981 and § 1982.

## II.   STANDARD OF REVIEW

We review de novo a district court's grant of a motion for summary judgment. Wallace v. Tex. Tech Univ., 80 F.3d 1042, 1046 (5th Cir. 1996). Summary judgment is appropriate if the

6

evidence, viewed in the light most favorable to the nonmovant, presents no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); see Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace, 80 F.3d at 1047.

### III.   DISCUSSION

In analyzing Plaintiffs' case under §§ 1981 and 1982, the district court applied the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[4] The first step in this analysis requires the plaintiff to establish a prima facie case of racial discrimination. McDonnell Douglas Corp., 411 U.S. at 802; LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 448 (5th Cir. 1996). In this circuit, a plaintiff establishes a prima facie case under § 1981 by showing that "(1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." Bellows v. Amoco Oil Co., 118 F.3d 268, 274

---

[4]     Although our research has found no cases in this circuit applying McDonnell Douglas outside the employment context, neither party has challenged the district court's methodology. Therefore, we will assume, for purposes of this appeal, that the district court's methodology was correct.

7

(5th Cir. 1997). In establishing the second element of the prima facie case, a plaintiff may rely on circumstantial evidence. Id. "A cause of action based upon section 1982 likewise requires an intentional act of racial discrimination by a defendant." Vaughner v. Pulito, 804 F.2d 873, 877 (5th Cir. 1986) (comparing § 1982 to § 1981); cf. Woods-Drake v. Lundy, 667 F.2d 1198, 1200 n.3 (5th Cir. 1982) ("Sections 1981 and 1982 are similar in language, legislative history, and purpose.").

Once the plaintiff has established a prima facie case, the burden of production shifts to the defendant to provide legitimate, nondiscriminatory reasons for its actions. See McDonnell Douglas Corp., 411 U.S. at 802; see also Lee v. Washington County Bd. of Educ., 625 F.2d 1235, 1238 (5th Cir. 1980). If the defendant meets this burden, "the McDonnell Douglas framework--with its presumptions and burdens--disappear[s]." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000) (quotation marks omitted). At this point, the plaintiff "must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id. at 143 (quotation marks omitted). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the [defendant]'s asserted justification is false, may permit the trier of fact to conclude that the [defendant] unlawfully discriminated." Id. at 148.

Plaintiffs have met the first and the third elements of the prima facie case. First, Plaintiffs, two black men, one black woman, and one Hispanic woman, are all racial minorities. In addition, in contracting with Advantage to lease cars, Plaintiffs were engaged in activities enumerated in §§ 1981 and 1982; § 1981 prohibits discrimination in making contracts[5] and § 1982 prohibits discrimination in leasing property.[6]

Furthermore, Plaintiffs have put forward evidence from which the final element of the prima facie case, intentional discrimination, may be inferred: (1) Advantage declined Mr. Daniels's debit card and Ms. Valiente's credit card, when both cards had sufficient balances to cover the transactions; (2) Advantage required Mr. and Mrs. Daniels and Ms. Valiente to pay deposits, but did not require Ms. Burke to do so; (3) Mr. and Mrs. Daniels and Ms. Valiente were charged higher rental rates than Ms. Burke; (4) Ms. Valiente was given a car with faulty alignment; and (5) Advantage initially refused to accept a cash deposit from Ms. Valiente. Thus, the district court properly

---

[5]   Section 1981(a) provides, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a) (2000).

[6]   Section 1982 reads, "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."  42 U.S.C. § 1982 (2000).

found that Plaintiffs' evidence made out a prima facie case of racial discrimination in violation of §§ 1981 and 1982.

As explained below, however, Advantage has presented legitimate, nondiscriminatory reasons for the occurrences listed by Plaintiffs. The question, then, is whether Plaintiffs have presented sufficient evidence for a trier of fact to determine that Advantage's proffered reasons are pretextual. Because we find that Plaintiffs have produced insufficient evidence suggesting that Advantage's given reasons are pretextual, we hold that summary judgment in favor of Advantage was proper.

First, there is insufficient evidence to conclude that Advantage's explanation for rejecting Mr. Daniels's and Ms. Valiente's cards was untrue. Advantage claims that the cards were rejected by Advantage because, when swiped, they were declined. Plaintiffs have presented no evidence that their credit cards were not actually declined, or that Advantage employees lied when they told Mr. Daniels and Ms. Valiente that the cards had been declined. Plaintiffs merely provide evidence that their cards should have had sufficient resources to cover the charges. This evidence is insufficient to survive summary judgment.

Second, Plaintiffs have presented no evidence contradicting Advantage's explanation for charging Mr. and Mrs. Daniels, Ms. Valiente, and Ms. Burke different deposit amounts. Advantage asserts that its company policy is to charge insurance renters a

10

$50 deposit and to charge retail renters a $200 deposit. According to Advantage, Ms. Valiente was charged a higher deposit because she was a retail renter, rather than an insurance renter, like Mr. and Mrs. Daniels and Ms. Burke. Plaintiffs have offered no evidence suggesting that this explanation is false.

Advantage concedes that both Mr. Daniels and Ms. Burke should have been charged $50 deposits. But Advantage has put forward evidence that Ms. Kamenicky's attempt to charge the Danielses a $200 deposit and Mr. Davis's failure to charge Ms. Burke a $50 deposit were caused by confusion over Advantage's policy with regard to insurance rentals, not racial animus. Ms. Kamenicky, mistakenly applying Advantage's retail rental policy, asked Mr. and Mrs. Daniels for a $200 deposit. Ms. Slonaker, Advantage's District Manager, quickly intervened to inform Ms. Kamenicky that insurance rentals require only a $50 deposit. Accordingly, Mr. and Mrs. Daniels eventually paid only a $50 deposit--the correct amount. Similarly, Mr. Davis, acting in accordance with Advantage's former insurance rental policy, did not charge Ms. Burke a deposit. When Ms. Slonaker discovered this, however, she informed Mr. Davis that a deposit was required for all insurance rentals, and she reprimanded him for not obtaining a deposit from Ms. Burke. Again, Plaintiffs have put forward no evidence contradicting any of Advantage's evidence on this point, or suggesting that they were charged deposits because of their race.

11

Third, Plaintiffs have not proffered any evidence that Advantage's given reason for charging Mr. and Mrs. Daniels and Ms. Valiente higher rental rates than Ms. Burke was pretextual. Advantage has provided evidence that retail customers, like Ms. Valiente, are subject to different rates than insurance customers, like Mr. and Mrs. Daniels and Mrs. Burke. Although Mr. and Mrs. Daniels and Ms. Burke were all insurance customers, Mr. and Mrs. Daniels used a different insurance company than Ms. Burke. The two insurance companies, apparently, had negotiated different rates with Advantage. Therefore, the uncontroverted evidence suggests that Advantage's reason for charging an array of rental rates for differently situated customers had nothing to do with the customers' races.

Fourth, Ms. Valiente has put forward no evidence suggesting that Advantage purposefully rented her a car with faulty alignment. Ms. Valiente has not even demonstrated that Advantage knew about the problem before renting the car to her. Rather, the undisputed evidence is that, when Ms. Valiente called another Advantage location, the location readily agreed to exchange the car for one with proper alignment. The evidence put forward by Ms. Valiente is insufficient to allow a rational jury to infer discriminatory motivations on the part of Advantage.

Fifth, Plaintiffs point to no evidence that Advantage's explanation for refusing to accept a cash deposit from Ms. Valiente was specious. Advantage contends that its policy

12

required retail renters to present a valid credit card to which Advantage could charge the full amount of the rental plus a $200 deposit.  Thus, accepting a $200 cash deposit was contrary to Advantage's policy.  This policy is a legitimate, nondiscriminatory explanation for Advantage's initial reluctance to accept the cash.  In response, Plaintiffs have presented no evidence that this was not Advantage's policy, or that Advantage only enforced this policy against minorities.  Therefore, Plaintiffs have not met their burden on this allegation.

Since Plaintiffs have put forward no summary judgment evidence suggesting that Advantage's legitimate nondiscriminatory reasons for its employees' actions were pretextual, this case presents no issue of disputed material fact, and Advantage is entitled to judgment as a matter of law.  Thus, the district court properly granted Advantage's motion for summary judgment.

## IV.    CONCLUSION

Accordingly, the district court's grant of summary judgment in favor of Advantage is AFFIRMED.

13