# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-60078
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
June 23, 2016

Lyle W. Cayce
Clerk

JOHNEVERIC T. POWELL,

      Plaintiff - Appellant

v.

ZURICH AMERICAN INSURANCE COMPANY,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 5:14-CV-115

Before KING, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

      Plaintiff–Appellant Johneveric T. Powell filed suit against Defendant–Appellee Zurich American Insurance Company, seeking damages related to Zurich's investigation and adjustment of Powell's workers' compensation claims. Powell asserted several state tort claims and alleged racial discrimination in violation of 42 U.S.C. §§ 1981 and 1982. Zurich filed for

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-60078

summary judgment, arguing that California's workers' compensation statute barred Powell's state law claims and that Powell failed to make a *prima facie* case of racial discrimination. Following Powell's abandonment of his state law claims, the district court granted Zurich's motion for summary judgment, dismissing Powell's claims for racial discrimination for failing to make out a *prima facie* case of discrimination. Powell now appeals. For the following reasons, we AFFIRM the judgment of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff–Appellant Johneveric T. Powell's suit arises out of a workers' compensation claim he filed with Defendant–Appellee Zurich American Insurance Company (Zurich). In 2012, Powell, an African-American male residing in Mississippi, was working as a crew leader of a seismic crew for Geokinetics, Inc., in southern California when he contracted coccidiodomycosis, otherwise known as Valley Fever. Powell began experiencing adverse symptoms in July 2012 and went to a number of doctors in the months thereafter to diagnose and treat his medical condition. Following the first diagnosis of his symptoms in November 2012, Powell filed a workers' compensation claim with Geokinetics related to his Valley Fever symptoms and his inability to work as a result. The claim was forwarded to Geokinetics' compensation carrier, Zurich, which assigned the claim to its Cordova, California, office and handled the claim pursuant to California law. Zurich sent Powell a letter on December 13, 2012, requesting Powell's medical history to process his claim. Zurich sent another letter the next day informing Powell that workers' compensation benefits would be delayed because of the need to secure medical records but that a decision would be made on or before February 5, 2013. And on December 19, 2012, one of Zurich's employees, Nick

2

No. 16-60078

Lardie, called Powell regarding his claim as the Zurich employee assigned to Powell's file, Cristina Salas, was on vacation at the time.[1]

Powell subsequently filed another workers' compensation claim with Zurich relating to a right iliac bone lesion injury. That claim was initially denied by Zurich on the grounds that no medical evidence demonstrated that the bone lesion was the result of Powell's employment with Geokinetics or a result of his Valley Fever. But Zurich later accepted the claim in June 2013 after medical evidence confirmed its relation to Powell's Valley Fever. On July 24, 2013, Zurich informed Powell by letter that it would be paying him temporary disability benefits on his workers' compensation claims. Zurich continued to pay Powell's temporary disability benefits until Powell reached the statutory limit of 104 weeks for such benefits in July 2014.

During the claims process, Zurich also received a report from one of Powell's physicians as to whether Powell should receive permanent disability. Zurich objected to the physician's determination on permanent disability and requested that Powell complete a Qualified Medical Examination (QME), under which three examiners from the medical unit of the California Workers' Compensation Appeal Board would determine Powell's permanent disability status.[2] Although Powell did not complete a QME and Zurich did not pay him permanent-total disability benefits prior to Powell filing suit, Powell began receiving permanent-temporary disability benefits from Zurich in July 2014.

Powell filed suit against Zurich on December 9, 2014, asserting a number of state tort law claims and claims under 42 U.S.C. §§ 1981 and 1982. As relevant to his civil rights claims and the instant appeal, Powell alleged that,

---

[1] Salas thereafter was the Zurich employee who dealt with Powell's workers' compensation claim.

[2] California law permits insurance carriers to request such a medical evaluation where there is a delay in determining a claim based on available medical evidence. *See* Cal. Code Regs. tit. 8, § 9812(g)(3).

during his conversation with Lardie on December 19, 2012, Lardie ridiculed Powell's attempts to explain his exposure to Valley Fever after Powell informed Lardie of his research that Valley Fever had a higher prevalence among African-Americans. In particular, Powell alleged that at one point Lardie referred to it as a "black man's disease" and remarked that "I hope you don't think I'm going along with this stuff about a disease that blacks get, so you stay down in Mississippi, getting a check and not having to work." Powell alleged that this incident, subsequent delays in receiving his workers' compensation benefits from Zurich, and denials of prescribed medical treatments by Zurich were the product of intentional racial discrimination against Powell as an African-American. Zurich denied the allegations of racial discrimination and, following discovery, moved for summary judgment on September 25, 2015.

In its motion for summary judgment, Zurich sought dismissal of Powell's state tort claims on the grounds that the California Workers' Compensation Act provided the exclusive remedy as to an employee's right to recover workers' compensation from an insurance carrier. As to Powell's racial discrimination claims, Zurich asserted that, even if Powell's evidence were viewed in the light most favorable to him, Powell had failed to demonstrate a *prima facie* case of discrimination. Zurich argued that Powell failed to show that any of Zurich's decisions were racially motivated or that they impaired a right under 42 U.S.C. § 1981(b) because Powell received the benefits that he was entitled to receive. Zurich also argued that Powell failed to demonstrate intentional discrimination, as his evidence consisted of two statements allegedly made by Lardie. Zurich further argued that Powell's Valley Fever claims were never denied, Powell had been paid out on some of his benefits, and any delay in benefits was supported by a legitimate, non-discriminatory reason—Zurich lacked the necessary medical evidence and its claims personnel had no

experience dealing with claims for Valley Fever.  Powell subsequently filed an opposition motion, conceding therein summary judgment on his state tort law claims.    In his opposition motion, Powell argued that his evidence of substandard service and maltreatment, together with his testimony regarding the racially charged nature of alleged comments by Lardie, made a *prima facie* showing that Zurich intentionally discriminated against him on the basis of race.    Powell also argued that Zurich failed to show a legitimate, non-discriminatory reason for the denial because Zurich never provided certain medically prescribed treatments for Valley Fever and because Lardie's discussion of Powell's race during their December 2012 conversation raised a genuine issue that any proffered non-discriminatory reason was pretextual.

The district court granted Zurich's motion for summary judgment on January 25, 2016.  Noting that the state law claims had been abandoned by Powell in his opposition motion, the district court held that Powell failed to show a genuine issue for trial under 42 U.S.C. §§ 1981 and 1982.  As to the § 1981 claim, the district court held that Powell failed to make out a *prima facie* case of discrimination because he failed to show that he was subject to intentional discrimination or that he had lost any additional benefits as a result of discrimination.  As to the § 1982 claim, the district court interpreted § 1982 as only applying to denials of renting or purchasing property, and Powell's complaint did not allege a denial or deprivation of real property.  The district court entered its final judgment that same day, dismissing Powell's claims with prejudice.  Powell timely appealed.

## II. STANDARD OF REVIEW

We review a grant of summary judgment *de novo*, applying the same standard as the district court.  *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, "[a] mere scintilla of evidence will not preclude granting of a motion for summary judgment." *Schaefer v. Gulf Coast Reg'l Blood Ctr.*, 10 F.3d 327, 330 (5th Cir. 1994) (per curiam). "We construe all facts and inferences in the light most favorable to the nonmoving party when reviewing grants of motions for summary judgment." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (quoting *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005)).

## III. RACIAL DISCRIMINATION UNDER 42 U.S.C. §§ 1981 AND 1982

On appeal, Powell argues that the district court erred when it held that he failed to demonstrate a *prima facie* case of discrimination under 42 U.S.C. § 1981, asserting that he demonstrated all three elements necessary for a *prima facie* case. He also argues that the district court erred when it dismissed his claim under 42 U.S.C. § 1982 because § 1982 applies to deprivations of personal property as well as real property and his right to recover benefits under a workers' compensation insurance contract involves a personal property right.[3] Without deciding whether Powell alleged the violation of a property right protected under § 1982 or the denial of a right protected under

---

[3] Stressing the express language of 42 U.S.C. § 1982, Powell notes that it applies to deprivation of personal property as well as real property on the basis of race:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real *and personal property*.

42 U.S.C. § 1982 (emphasis added). Powell argues that he has a right to collect workers' compensation benefits under contract by suit and that this constitutes a "chose in action," which is a form of personal property not reduced to possession. However, we need not and do not address this argument in light of Powell's inability to demonstrate an intent to discriminate by Zurich.

§ 1981,[4] we find that Powell failed to allege a *prima facie* case of discrimination because he failed to establish, by a preponderance of the evidence, that Zurich had intent to discriminate against him on the basis of race.

We have repeatedly noted that "[i]n cases arising under 42 U.S.C. § 1981, the plaintiff must prove discriminatory intent." *Mason v. United Air Lines, Inc.*, 274 F.3d 314, 318 (5th Cir. 2001). "A cause of action upon [42 U.S.C. §] 1982 likewise requires an intentional act of racial discrimination by a defendant." *Vaughner v. Pulito*, 804 F.2d 873, 877 (5th Cir. 1986). But, we have held that, in the absence of direct evidence of discriminatory intent, a plaintiff may proffer circumstantial evidence of discrimination "under the *McDonnell Douglas* burden-shifting framework." *Dunaway v. Cowboys Nightlife, Inc.*, 436 F. App'x 386, 390 (5th Cir. 2011) (unpublished); *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under this framework, the plaintiff must first create a presumption of intentional discrimination by establishing a prima facie case." *Dunaway*, 436 F. App'x at 390. A *prima facie* case of discrimination requires a plaintiff to "establish '(1) that [he] is a member of a racial minority; (2) that [the defendant] had intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute.'" *Arguello v. Conoco,*

---

[4] While we hold that Powell failed to show intentional discrimination, we note that, even assuming that he demonstrated intentional discrimination, there would still be a question of whether he made out a *prima facie* case under 42 U.S.C. §§ 1981 and 1982. Powell does not point to, and we are unaware of, any application of these statutes in the context of an insurance contract and workers' compensation benefits. It also is unclear whether there has been a deprivation of personal property under § 1982 or that Powell has been denied "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship" to demonstrate a violation of the right "to make and enforce contracts" under § 1981. Although there was a delay in Zurich's payment of benefits, Powell ultimately received temporary-total and permanent-temporary disability benefits from Zurich. And while Zurich has yet to pay permanent-total disability benefits, it has never stated that it will not pay these benefits. *See Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001) (noting in the context of a § 1981 claim that "a plaintiff must establish the loss of an actual, not speculative or prospective, contract interest").

*Inc.*, 330 F.3d 355, 358 (5th Cir. 2003) (quoting *Morris,* 277 F.3d at 751). A plaintiff must make this "prima facie case of discrimination by a preponderance of the evidence." *LaPierre v. Benson*, 86 F.3d 444, 448 (5th Cir. 1996). While this burden is not onerous, it requires a plaintiff to demonstrate acts that "if otherwise unexplained are more likely than not based on the consideration of impermissible factors." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1977). "If the plaintiff establishes a *prima facie* case of discrimination, the burden then shifts to the [defendant] to produce evidence that its actions were justified by a legitimate, nondiscriminatory reason." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002). Upon production of such evidence, "the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the [defendant]'s nondiscriminatory explanation is pretextual." *Id.*[5]

We cannot conclude that Powell showed by a preponderance of the evidence that Zurich had the intent to discriminate against him on the basis of his race. Powell does not point to direct evidence of a discriminatory motive in the instant case. *See Stanstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002) ("Direct evidence is evidence that, if believed, proves the fact of

---

[5] While we have frequently applied this burden-shifting framework to claims of racial discrimination under 42 U.S.C. § 1981, *see Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011), our precedent is unclear as to whether it applies to claims of racial discrimination under 42 U.S.C. § 1982. *Cf. Daniels v. Advantage Rent-A-Car Inc*, 80 F. App'x 936, 939 (5th Cir. 2003) (per curiam) (unpublished) (assuming, without deciding, that the framework applied). Other circuits, however, have analyzed discrimination claims arising under 42 U.S.C. § 1982 using this framework. *See Koorn v. Lacey Twp.*, 78 F. App'x 199, 207 (3d Cir. 2003) (unpublished); *Selden Apartments v. U.S. Dep't of Hous. & Urban Dev.*, 785 F.2d 152, 159 (6th Cir. 1986). And we have frequently interpreted the two statutes in tandem, recognizing that "[s]ections 1981 and 1982 are similar in language, legislative history, and purpose." *Woods-Drake v. Lundy*, 667 F.2d 1198, 1200 n.3 (5th Cir. 1982). Assuming, without expressly deciding, that this framework applies, we find—for the reasons herein—that Powell fails to demonstrate direct evidence of intent to discriminate or even a *prima facie* case of racial discrimination under the *McDonnell Douglas* framework.

discriminatory animus without inference or presumption."). Rather, he argues that the alleged comments made by Lardie, coupled with his substandard service and maltreatment by Zurich, are circumstantial evidence that demonstrates an intent to discriminate. However, Powell's evidence does not demonstrate that any delay or non-receipt of benefits was "more likely than not based on the consideration of impermissible factors." *Furnco*, 438 U.S. at 577. Powell's evidence requires a number of inferential leaps to find an intent to discriminate on the part of Zurich, particularly given that an employee other than Lardie handled most of Powell's claim, Zurich was within its statutory rights to require medical evidence and investigate Powell's claim, and Powell ultimately received benefits. Furthermore, we have previously observed in other cases of discrimination that such stray discriminatory remarks without proximate relation to an allegedly discriminatory decision will not suffice to show discriminatory intent. *See Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000) (finding that isolated remarks by one committee member did not demonstrate discriminatory intent).

Powell nonetheless argues that his case is akin to that of the plaintiffs in *Arguello* where the court found that the second element of the *prima facie* case was satisfied when the plaintiffs experienced discriminatory remarks and substandard service from a retail employee. *Arguello*, 330 F.3d at 358. We disagree and find *Arguello* inapposite. Unlike in that case, where the plaintiffs faced a number of unprompted racist remarks and obscenities, Lardie's alleged statements were prompted by Powell's discussion of Valley Fever's prevalence among African-Americans and were not the sort of crude remarks at issue in *Arguello*. And the substandard treatment faced by the plaintiff in *Arguello* (locking the plaintiffs out of the store and tampering with their goods) had no nondiscriminatory basis. *Id.* at 357. Here, the alleged substandard treatment

9

No. 16-60078

by Zurich (not paying for certain procedures or delaying benefits) was justified by Zurich's need to investigate Powell's claim and obtain medical evidence.

Even assuming that Powell established a *prima facie* case of discrimination, we would conclude that his 42 U.S.C. §§ 1981 and 1982 claims fail because Powell failed to rebut Zurich's legitimate, non-discriminatory reasons for delaying his receipt of benefits—namely the need for Zurich to obtain medical evidence and the unfamiliarity of Zurich employees with Valley Fever. *See Gilbert v. Donahoe*, 751 F.3d 303, 311 (5th Cir. 2014) ("Under our precedent, we may 'affirm on any ground supported by the record, including one not reached by the district court.'" (quoting *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012)). We have noted that "[a] plaintiff can establish pretext 'either through evidence of disparate treatment or by showing that the [defendant]'s proffered explanation is false or 'unworthy of credence.'" *Nasti v. CIBA Specialty Chems.*, 492 F.3d 589, 593 (5th Cir. 2007) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). But Powell adduced no evidence of disparate treatment of similarly situated individuals who sought benefits. Moreover, Powell's argument that Lardie's comments during the December 2012 phone call demonstrated pretext is a recitation of his *prima facie* case, not rebuttal evidence of pretext. *See Raggs*, 278 F.3d at 468 ("[E]vidence of pretext is not enough where the plaintiff has created only a weak issue of fact as to whether the [defendant]'s reason is untrue.") Because Powell failed to demonstrate that Zurich intentionally discriminated against him on the basis of race, we hold that the district court did not err in granting summary judgment for Zurich on Powell's claims under 42 U.S.C. §§ 1981 and 1982.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.