# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 28, 2025

Lyle W. Cayce
Clerk

No. 24-11048

Brianna Randle; Sywayne Burgess,

*Plaintiffs—Appellants*,

*versus*

The PNC Financial Services Group; PNC Bank; Cindy Avina, *Individually and in her professional capacity*; Ashley Alvarez, *Individually and in her professional capacity*; Karina Chapa, *Individually and in her professional capacity*; Michelle Nowlin, *Individually and in her professional capacity*; The PNC Financial Services Group, Incorporated; Officer FNU Dixon; Officer FNU Chapel, #2511; Officer FNU Gomez, #3341; Officer FNU Evans, 2911; Arlington Police Department,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:23-CV-263

Before Southwick, Higginson, and Wilson, *Circuit Judges*.

Per Curiam:[*]

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-11048

Sywayne Burgess and Brianna Randle, proceeding *pro se* and *in forma pauperis*, brought this civil rights action under 42 U.S.C. §§ 1981 and 1983 against PNC Bank employee Cindy Avina and City of Arlington Police Officer Anthony Dixon.  Burgess appeals the grant of summary judgment to Avina, and Randle appeals the dismissal of her claim against Officer Dixon on grounds of qualified immunity.  We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

On December 16, 2022, Burgess visited a PNC Bank branch located in Arlington, Texas, to withdraw $28,000 from his account.  The bank did not carry that amount of cash but offered to order the funds for him to pick up at a later date.  On December 21, the bank called Burgess to inform him that his funds were ready.  The same day, Burgess, accompanied by Randle, went to pick up the money.

To complete a cash withdrawal, PNC policy requires the accountholder to present two forms of identification.  Federal law also requires the bank to file a Currency Transaction Report ("CTR") of withdrawals greater than $10,000.  A CTR form includes personal information of the accountholder such as their Social Security number and occupation.

Burgess initially refused to provide identification or answer questions pursuant to the CTR.  Randle attempted to answer questions on Burgess's behalf but was immediately told that since Burgess was the sole accountholder, the answers could only come from him.  Burgess and Randle believed the questions to be unnecessary and quickly became frustrated with the bank employees.  Avina then took over the transaction in an attempt to "de-escalate the situation," and told Burgess that once he answered the questions the transaction would be complete.  Randle then walked away from the teller window.

No. 24-11048

As the transaction was nearing completion, Randle allegedly returned to the teller window and began accusing Avina and her coworkers of being racist and threatening them with physical violence and litigation. Randle denies these allegations and contends that she told Avina only that she would file complaints against her. Avina then stopped the transaction and went into the bank vault to call PNC's loss prevention department. Both Randle and another PNC employee called the police to the bank. Burgess alleges that before the police arrived, he requested his credentials back from Avina because he did not trust her. According to Burgess, Avina replied that she did not "trust people like y'all," and clarified that she meant "black people."[1] Avina denies making such a statement.

Several police officers — including Officer Dixon — arrived at the bank. The officers attempted to confer between themselves about how to resolve the situation and got inside a patrol car to discuss. Randle alleges that after following the officers outside, Office Dixon intentionally hit her with the door as he exited the vehicle. Once the situation had calmed, Burgess provided the required identification and information, and Avina completed his transaction.

The Plaintiffs filed a nine-count complaint against PNC and several bank employees under various causes of action. Plaintiffs amended their complaint to add claims against the City of Arlington Police Department and several City police officers, including Officer Dixon. The case was assigned to a United States Magistrate Judge, who in a report and recommendation urged dismissal of all claims under Federal Rule of Civil Procedure 12(b)(6),

---

[1] Randle testified to hearing Avina make several other allegedly racially charged statements. Avina denies making such statements, and Plaintiffs do not mention this evidence on appeal.

except those against Avina and Dixon in his personal capacity. The district court accepted the magistrate judge's recommendation.

Avina subsequently moved for summary judgment, and the magistrate judge recommended that the motion be granted. The recommendation concluded that Avina "articulated a legitimate, non-discriminatory reason for stepping away from the transaction," and that Burgess could not show that Avina's conduct was "pretextual." The district court agreed and entered judgment for Avina.

Officer Dixon moved for dismissal of Randle's claims, asserting qualified immunity. The magistrate judge recommended dismissal and concluded in its qualified immunity analysis that Randle failed to support that Officer Dixon violated clearly established law.[2] The district court adopted the magistrate judge's recommendation and dismissed Randle's claim with prejudice.

After the district court entered final judgment, Burgess and Randle timely appealed.

## DISCUSSION

On appeal, Burgess's central contention is that the district court improperly drew inferences and otherwise resolved factual disputes in favor of Avina. We review the grant of summary judgment *de novo*, applying the same standard as the district court. *Morris v. Town of Independence*, 827 F.3d 396, 399 (5th Cir. 2016). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In

---

[2] The magistrate judge also concluded that, to the extent Randle alleges a state law claim against Officer Dixon, the court should decline to exercise supplemental jurisdiction.

considering a motion for summary judgment, we view all facts and draw all inferences in favor of the non-moving party. *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399 (5th Cir. 2021).

The principal statute on which Burgess relies provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). We have explained that in the "commercial context, in order to establish a *prima facie* case under [Section 1981], the plaintiff must show that (1) he or she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288–89 (5th Cir. 2004).

Burgess satisfies the first requirement because he is a member of a racial minority. We need not analyze the second requirement, whether there was intentional discrimination, because Burgess cannot satisfy the third — any discrimination must have interfered with an activity enumerated in the statute. *See Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 388 (5th Cir. 2017). Section 1981 does not provide a "general cause of action for race discrimination." *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003). Instead, relief requires that racial discrimination block or impair a contractual relationship. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). This includes the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Body by Cook*, 869 F.3d at

386 (quoting 42 U.S.C. § 1981(b)).  We have held that to establish the deprivation of a Section 1981 right, the plaintiff must demonstrate "the loss of an actual, not speculative or prospective contract interest."[3]  *Arguello*, 330 F.3d at 358 (quoting *Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 751–52 (2001)).  A plaintiff must prove that "but for race, [he] would not have suffered the loss of a legally protected right."  *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

Burgess has failed to show that Avina interfered with his contractual relationship with PNC Bank, *i.e.*, his ability to withdraw funds from his account.  The only evidence offered by Burgess is his own testimony, and we examine its details.  While his affidavit conflicts in some details with Randle's testimony,[4] it fails to support the argument that the transaction was delayed because of his race.  Burgess testified that he only needed to provide identification to receive his funds.  When employees began questioning him, he "expressed [his] desire" for the bank to complete the withdrawal.  While he contends that he "follow[ed] bank policy," the evidence shows he did not follow that policy which required answering the questions from the CTR.

---

[3] Here, the factual context does not affect our decision.  *But cf. Arguello*, 330 F.3d at 360–61 ("In the retail context . . . the relationship is based on a single discrete transaction — the purchase of goods[,] . . . [whereas] dining at a restaurant generally involves a contractual relationship that continues over the course of the meal and entitles the customer to benefits in additional to the meal purchased."); *Hager v. Brinker Tex., Inc.*, 102 F.4th 692, 700–01 (5th Cir. 2024) (further discussing the distinction).

[4] The parties offer contradictory accounts of whom the funds belonged to, which employee told Randle to stop answering questions for Burgess, when Randle stepped away from the teller window, who invited them to the bank that day, and whether they had met Avina prior to December 21.  Additionally, both Burgess and Randle testify that Avina made discriminatory remarks prior to exiting the teller window, though on appeal they now allege that these statements came after.

Burgess argues that the district court failed to consider "police records" and "video surveillance footage" that disprove Avina's testimony and show that Burgess complied with all bank procedure. On the contrary, the Computer-Aided Dispatch Report discusses the disruptions in detail, and states that Burgess and Randle assumed that Avina was discriminating against them by asking questions regarding the transaction. Similarly, the "footage" is nothing more than a compilation of screenshots from the bank window on the day in question. Without addressing the obvious concerns regarding the admissibility of such evidence, we conclude it contains no probative value and fails to support Burgess's argument.

It is uncontradicted that Avina and other bank employees were ready to proceed with the transaction. The bank specially ordered Burgess's funds and even sought his presence on the day in question to execute the withdrawal. Upon arrival at the bank, Avina and other bank employees requested Burgess's identification pursuant to bank policy and only questioned him further to establish information pursuant to the CTR. When Burgess did not immediately receive his funds, he became frustrated and refused to answer questions asked by bank employees. When he finally provided all necessary information and identification, Avina completed his withdrawal. His own conduct and resistance — not his race — interfered with his ability to receive his funds. As a result, there is no liability under Section 1981.

Randle also fails to show reversible error. The magistrate judge recommended dismissal of Randle's Section 1983 claim as Randle did not allege sufficient facts to overcome Dixon's qualified immunity defense. Because Randle failed to object to the magistrate judge's recommendation, we review her appeal for plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

No. 24-11048

Randle does not identify any error made by the district court, much less an error that was clear and obvious. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). There are other purported errors asserted, but we conclude the briefing is inadequate and we need not consider them.

AFFIRMED.[1]

---

[1] JUDGE HIGGINSON concurs in judgment only.