# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 12, 2011

No. 10-30663

Lyle W. Cayce
Clerk

MARCUS C. DUNAWAY; ET AL.

Plaintiffs-Appellants

v.

COWBOYS NIGHTLIFE, INC.

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:07-CV-1138

Before JOLLY, HAYNES, Circuit Judges and RODRIGUEZ[1], District Judge.
RODRIGUEZ, District Judge.[2]

Plaintiffs-Appellants Marcus Dunaway, et al appeal the district court's grant of Defendant Cowboys' motion for summary judgment on Plaintiffs' racial discrimination claim under 42 U.S.C. § 1981 and pendent state law claims. Plaintiffs claim that Cowboys discriminated against them by refusing them entry to the Cowboys nightclub in Lake Charles, Louisiana and/or forcibly removing them after permitting them to pay the entrance fee and enter the club.

---

[1] District Judge of the Western District of Texas, sitting by designation.

[2] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-30663

Cowboys asserts that the Plaintiffs were excluded for failure to comply with the club's dress code and other policies. Plaintiffs allege that they were excluded due to their race. Because Plaintiffs' claims implicate an interest protected by 42 U.S.C. § 1981, and there are genuine issues of material fact as to whether Cowboys used its dress code and other policies as a pretext for discrimination, we REVERSE and REMAND the judgment of the district court.

## I.

### A. Factual Background

Cowboys owns and operates a nightclub in Lake Charles, Louisiana. On several nights of the week, the nightclub is open to the public. The club charges a small entry fee at the door, and has a dress code which is enforced by bouncers at the door of the club as well as other security personnel inside. The dress code is posted at the door and prohibits a number of clothing items, including "baggy attire," "characters or numbers," and "urban wear." It also requires that shirt tails must be "tucked in."

Plaintiffs, all African American males, attended or attempted to attend Cowboys night club on various occasions in 2006. They allege that Cowboys refused them entry to the nightclub, and/or forcibly removed them from the nightclub after they were permitted to enter. Some Plaintiffs allege that they were refused entry at Cowboys because their clothes were "too baggy" or "too urban," or had logos or labels on them. On some occasions, they went home and changed their clothes, but were still denied entry upon their return. Others allege that even after being allowed to enter the club, they were asked to leave shortly thereafter. They allege that in some cases they were told that they were in violation of the dress code, but on other occasions they were asked to leave for other reasons such as not dancing while on the dance floor, or standing too close to the bar. In some cases, they allege that they were asked to leave without being given any reason.

No. 10-30663

Plaintiffs argue that these actions were discriminatory, and that Cowboys only refused them entry or forced them to leave the club because of their race. Cowboys asserts that these individuals were denied entry or removed from the club because they failed to comply with the club's dress code or with other club policies.

## B. Procedural History

Plaintiffs filed a petition in the 14th Judicial District Court for the Parish of Calcasieu, Louisiana, on February 21, 2007 against Defendants Cowboys Nightlife and Cowboys of Lake Charles. They asserted violations of 42 U.S.C. § 2000(a); 42 U.S.C. § 1981; Article 1, Section 12 of the Louisiana Constitution; and the Louisiana Commission on Human Rights Act, La. R.S. 51:2231, et seq. Plaintiffs subsequently filed three supplemental and amending petitions adding additional Plaintiffs and claims. Cowboys removed the case to the Western District of Louisiana. Cowboys Nightlife and Cowboys of Lake Charles each filed separate answers to the original petition and each of the supplemental and amending petitions. All claims against Cowboys of Lake Charles were subsequently dismissed with prejudice.

On January 22, 2010, Cowboys Nightlife ("Cowboys") filed a motion to strike the claims for special, compensatory, and punitive damages, or in the alternative a motion for partial summary judgment on the same claims. While that motion remained pending, on April 20, 2010, Cowboys filed a motion to dismiss the 42 U.S.C. § 2000a claims, and a motion for summary judgment on all remaining claims.

On May 28, 2010, the district court dismissed the claims under 42 U.S.C. § 2000a for lack of subject matter jurisdiction due to Plaintiffs' failure to notify

3

No. 10-30663

the applicable state agency before filing the civil action as required by 42 U.S.C. § 2000a-3(c). Cowboys then filed three motions in limine on June 4, 2010.[3]

Without ruling on any of the motions of limine, on July 1, 2010, the district court granted summary judgment to Cowboys and dismissed Plaintiffs' 42 U.S.C. § 1981 claims and pendent state law claims. The court found that Plaintiffs had presented no evidence of direct discrimination, and analyzed the claims under the *McDonnell Douglas* burden shifting framework.

In the case of those individuals who were denied entry to the club (the "denied entry" claims), the district court found that they were all denied entry for failure to comply with the club's legitimate, non-discriminatory dress code, and that Plaintiffs had submitted no persuasive evidence that the dress code was applied in a discriminatory manner.

In the case of those individuals who were permitted to enter the club, but subsequently asked to leave (the "removed after entry" claims), the court held that Plaintiffs failed to state a prima facie case because they failed to identify any right protected by 42 U.S.C. § 1981 of which they were deprived. Even if a statutorily protected right were implicated, the court held that Plaintiffs could not show a prima facie case of discrimination, and that Cowboys had presented legitimate, non-discriminatory reasons for asking each of the Plaintiffs to leave, such as dress code violations or violations of other legitimate club policies.

---

[3] The motions challenged four pieces of evidence submitted by Plaintiffs in their opposition to summary judgment: (1) the affidavit of Plaintiffs' proposed expert witness Wade Schindler, for failure to comply with *Daubert* standards; (2) portions of Plaintiffs' depositions in which they alluded to additional instances of discrimination and (3) 12 affidavits of additional witnesses alluding to witnessing discrimination or being discriminated against, on the basis that the statements are vague and lack a time frame or date of reference; (4) documents produced by the FBI in response to a FOIA request by Plaintiffs, on the basis that the documents are hearsay, unauthenticated, and include statements made by unnamed persons to unnamed individuals; and (5) a "sworn statement" given by Jared Cheramie, on the basis that it is unauthenticated, fails to conform with the requirements of Fed. R. Civ. P. 56(e), and is inadmissible hearsay outside of any hearsay exception because it was not given at a trial, hearing, other proceeding, or deposition.

The court noted that Cowboys had submitted testimony from several individuals that the club did not treat African Americans differently than Caucasians or other similarly situated patrons.  It noted that Plaintiffs had submitted 12 affidavits, that were the subject of Cowboys' pending motion in limine, which attested to African Americans being excluded or discriminated against in the club or before entering the club.  The court concluded that these affidavits were "vague and lack specificity" such that the court could not conclude that they were describing the events pled in the petition.  The court found that Plaintiffs' other evidence merely established "feelings and perceptions of being discriminated against," which does not amount to evidence of discrimination.

Finally, the district court dismissed the pendent state law claims with prejudice.  The court provided no reasoning for dismissing these claims.

## II.  DISCUSSION

We review a District Court's grant of summary judgment *de novo*, applying the same standard as the district court.  *Bolton v. City of Dallas*, 472 F.3d 261, 263 (5th Cir. 2006).  The inquiry is "limited to the summary judgment record before the district court."  *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 871 (5th Cir. 2009) (quoting *Topalian v. Ehrman,* 954 F.2d 1125, 1131-32 n. 10 (5th Cir. 1992)).

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bolton*, 472 F.3d at 263.  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmoving party.  *Anderson*, 477 U.S. at 248; *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).  A fact is "material"

No. 10-30663

if its resolution in favor of one party might affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002).

We review all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 180 (5th Cir. 2009). The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the moving party meets its initial burden, the nonmoving party "must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e); *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

A plaintiff may prove a discrimination claim under 42 U.S.C. § 1981 with either direct or circumstantial evidence. *Bright v. GB Bioscience Inc.*, 305 Fed.Appx. 197, 201 n.3 (5th Cir. 2008) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989), *superceded by statute on other grounds as stated in CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 449 (2008); *Pratt v. City of Houston*, 247 F.3d 601, 606 n.1. (5th Cir. 2001)). Where there is no direct evidence of discriminatory intent, we analyze circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *Bright*, 305 Fed.Appx. at 201. Under this framework, the plaintiff must first create a presumption of intentional discrimination by establishing a prima facie case. *Id.*

To establish a prima facie case of discrimination under 42 U.S.C. § 1981, a plaintiff must first establish that (1) he is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated

No. 10-30663

in the statute. *Arguello v. Conoco*, 330 F.3d 355, 358 (5th Cir. 2003) (citing *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001)). Such activities include the making and enforcement of contracts, defined as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981 (a)-(b).

If the Plaintiff establishes a prima facie case of discrimination, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its allegedly discriminatory action. *Bright*, 305 Fed.Appx. at 202. If the defendant presents such evidence, the burden then shifts back to the plaintiff to demonstrate that the defendant's proffered explanation is pretext for discrimination. *Id.* at 202-03.

## A.

In their first issue on appeal, Plaintiffs assert that the District Court erred by holding that no 42 U.S.C. § 1981 right was implicated in the removed after entry claims, and thus that Plaintiffs had failed to satisfy the third prong of the prima facie analysis. Appellants argue that the district court erred by applying a "retail transaction" analysis to the claims, instead of a more appropriate "restaurant or club" analysis.

In *Arguello v. Conoco,* we held that 42 U.S.C. § 1981 does not apply in the context of a retail transaction after the initial transaction has been completed. 330 F.3d at 360. "In the retail context...there is no continuing contractual relationship. Instead, the relationship is based on a single discrete transaction - the purchase of goods." *Id.* We acknowledged that the retail transaction is distinct from situations involving discriminatory service in "restaurants and clubs," noting that dining at a restaurant creates a contractual relationship "that continues over the course of the meal and entitles the customer to benefits in addition to the meal purchased." *Id.* at

7

No. 10-30663

360 (citing *McCaleb v. Pizza Hut of Am., Inc.,* 28 F. Supp. 2d 1043 (N.D. Ill. 1998); *Charity v. Denny's, Inc.,* Civ. A. No. 98-0554, 1999 WL 544687, at *3 (E.D. La. Jul. 26, 1999)).

Here, the district court noted that each removed after entry claimant was allowed to pay the entrance fee and enter the club, and concluded that such payment and entry was a completed contractual transaction. Once the contract was complete by entering the club, the district court held that 42 U.S.C. § 1981 was not implicated again unless and until the individual attempted to make another contract within the club, by buying a drink or paying to play a game.[4] The district court held that "[a]lthough the club is perhaps more similar to a restaurant than a retail store, the plaintiffs cannot point to any service similar to a restaurant which they sought but Cowboys refused to provide."

We have not yet ruled on whether a "retail transaction" or "restaurant" analysis is more appropriately applied to 42 U.S.C. § 1981 claims involving venues such as bars and nightclubs. Appellants cite several district court and other appellate court cases for the argument that the restaurant analysis should extend to bar or nightclub cases, however, none directly support their argument.[5]

---

[4] Although not explicitly stated in the Order, it appears that the District Court held, and the parties do not dispute, that the denied entry claims implicate the individuals' right to make and perform contracts, by denying them the opportunity to pay the entry fee.

[5] The most analogous is a Sixth Circuit case, *Watson v. Fraternal Order of Eagles.* In that case, the court applied 42 U.S.C. §1981 where an African-American couple, the Watsons, were forced to leave a local Eagles Club hall after being admitted with friends because other patrons informed them that "blacks were not welcome." *Watson v. Fraternal Order of Eagles,* 915 F.2d 235, 238 (6th Cir. 1990). The Watsons alleged that they were effectively forced to leave the club before having the opportunity to purchase soft drinks at the club's bar, and the Sixth Circuit held that the claim implicated 42 U.S.C. §1981 because the Watsons were prohibited from making a contract to purchase soft drinks. *Id.* at 243 ("[R]equesting them to leave in order to prevent them from purchasing soft drinks could be found to be merely the method used to refuse to contract. Were it otherwise, commercial establishments could avoid

No. 10-30663

None of our sister courts have applied 42 U.S.C. §1981 to nightclub or bar cases such as the one at hand.[6] However, several district courts, including one in this Circuit, have applied 42 U.S.C. § 1981 in the restaurant context. In *Charity v. Denny's*, the Eastern District of Louisiana permitted a 42 U.S.C. §1981 claim to survive summary judgment when plaintiffs were refused service by their server, and even when later served by the manager, were subject to harassment, threatening behavior, and a racial slur by the server, ultimately resulting in them leaving the restaurant. *Charity v. Denny's*, Civ. A. No. 98-0554, 1999 WL 544687, *5 (E.D. La. Jul. 26, 1999). Similarly, in *McCaleb v. Pizza Hut of America*, the Northern District of Illinois found that plaintiffs' allegations that they were confronted, threatened, ignored, treated rudely, refused plates and utensils until they asked, and refused drinks even when they asked, amounted to a 42 U.S.C. § 1981 claim because it effectively forced the plaintiffs to leave the restaurant

---

liability merely by refusing minorities entrance to the establishment before they had the chance to order."). The *Watson* case is easily distinguishable from this one, because the Watsons did not pay any entry fee to get into the club. Thus, the only contract at issue in that case was the potential purchase of soft drinks. Furthermore, the Watsons had specifically claimed that they were prohibited from purchasing soft drinks.

    *See also Wyatt v. Security Inn Food & Beverage*, 819 F.2d 69 (4th Cir. 1987) (addressing only Plaintiff's claims under 42 U.S.C. § 2000a and other civil rights laws, not the applicability of 42 U.S.C. §1981, to uphold a jury verdict on a claim that African American bar patrons were ejected from a bar based on a facially neutral "drinks only" policy which required all patrons to order a drink if they wished to remain in the club); *Taylor v. Bar MT LLC*, Civ. A. No. H-09-481, 2009 WL 5195982 (S.D. Tex. Dec. 22, 2009) (discussing only a 42 U.S.C. § 2000a claim, not the Plaintiff's other 42 U.S.C. § 1981 claim, arising from allegations that the dress code at Bar MT was a pretext for racial discrimination); *Mazloun v. District of Columbia Police Dep't*, 522 F. Supp. 2d 24 (D.D.C. 2007); 42 U.S.C. § 1981 (discussing the "full and equal benefit" clause of 42 U.S.C. § 1981 (rather the "make and enforce contracts" clause), which does not necessarily implicate contractual rights).

    [6] Excepting the Sixth Circuit decision in *Watson v. Fraternal Order of Eagles, supra.*

before they could complete the meal that they had intended to eat.   28 F. Supp. 2d 1043, 1047-48 (N.D. Ill. 1998).[7]

We find these restaurant cases demonstrative of the concept that certain benefits arise out of a contract, and those benefits are protected by 42 U.S.C. § 1981.  A customer typically enters a contract with a restaurant by purchasing food or beverages.  The purchase of food entitles the customer to other benefits, such as utensils with which to eat the food, access to the restrooms, and the opportunity to consume the meal without exposure to harassment rising to the level that would force the patrons to leave the restaurant.

Likewise, a patron enters a contract with a nightclub like Cowboys by paying an entry fee.  The entry fee not only entitles the purchaser to enter the premises of the club, but also to certain benefits.  A Cowboys nightclub patron is entitled to access the interior of the club, listen to the music being played, access the dance floor and the restrooms, purchase drinks, and pay to play video poker or other games.

A nightclub patron does not, of course, hold an unlimited right to remain in the interior of the club. If an individual violates a valid club policy, the club may view that as a termination of the contractual relationship, and force the patron to leave.  Similarly, a restaurant patron's right to finish her meal is not absolute.  If she violates the policies of the restaurant in some

---

[7] *See also Perry v. Burger King* 924 F. Supp. 548, 552 (S.D.N.Y. 1996) (holding that the plaintiff had stated a claim under 42 U.S.C. § 1981 when he alleged that he was prohibited from using the restroom at a Burger King, after ordering and eating a meal, because he was black); *Jones v. City of Boston*, 738 F. Supp. 604 (D. Mass. 1990).  *But see Bobbitt by Bobbitt v. Rage Inc.*, 19 F. Supp. 512, 517-18 (W.D.N.C. 1998); *Harrison v. Denny's Restaurant, Inc.*, No. C-96-0343, 1997 WL 227963, \*4 (N.D. Cal. Apr. 24, 1997)*; Robertson v. Burger King*, 848 F. Supp. 78, 80-81 (E.D. La. 1994) (holding that delays in service at a restaurant, such as when black patrons are served or attended to only after white patrons, do not amount to an actionable 42 U.S.C. § 1981 violation).

No. 10-30663

way, she may be forcibly removed even before she has the chance to complete her meal, or use the restaurants' restroom, or enjoy some other benefit of restaurant patronage.

However, an individual who is forcibly removed from the club after entry, denied access to the dance floor, or prohibited from purchasing drinks or playing games, may be subject to a violation of his contractual rights protected by 42 U.S.C. § 1981.  If forcibly removed or otherwise prevented from enjoying the contractual benefits associated with the entrance fee, solely on the basis of his race or other impermissible rationale, then his 42 U.S.C. § 1981 rights have been violated.

In this case, several of the Plaintiffs allege that the true reason they were removed from Cowboys was solely because of their race, not because of any violation of valid club policy.  Accordingly, we find that the district court erred in holding that the denied after entry claims did not implicate the contractual rights protected by 42 U.S.C. § 1981.

**B.**

In their second issue on appeal, Plaintiffs argue that the district court erred in holding that the Plaintiffs failed to present sufficient evidence of discrimination to survive summary judgment.  Because Plaintiffs presented sufficient evidence of pretext to create a genuine issue of material fact as to Cowboys' discriminatory motive, we find that the district court erred in granting summary judgment.

In the absence of direct evidence of discrimination, we apply the *McDonnell-Douglas* burden-shifting analysis.[8]  The district court granted

---

[8] Two potential pieces of direct evidence were presented by Plaintiffs in response to the motion for summary judgment.  The first is the sworn statement of Jared Cheramie, which we discuss in the context of Plaintiff's pretext evidence.  *See infra.*  The second relates only to Dunaway's denied entry claims. In opposition to summary judgment, Plaintiffs offered several affidavits from third parties including Louis Hebert, whose affidavit states that, one night

No. 10-30663

summary judgment on the denied entry claims on the basis that those individuals were in violation of the dress code, and thus Cowboys offered legitimate, non-discriminatory reasons for denying their entry to the club. Although holding that the removed after entry claims did not implicate a right protected by 42 U.S.C. § 1981, the district court also noted that those claims did not state a prima facie case of discrimination because they were supported only by the claimants' "feelings and perceptions of being discriminated against."

## 1.  Evidence as to Legitimate, Non-Discriminatory Rationale

Cowboys argues that for each discriminatory incident alleged by the Plaintiffs, there is a legitimate non-discriminatory basis for the action taken. Cowboys has presented sufficient evidence that its dress code is legitimate and non-discriminatory, as are other policies and procedures. Among its evidence in support, Cowboys provided affidavits from its owner C.O. Vallet, head of security Trent Moreau, and former head of security Henry Lee Withers, and a deposition of security employee Daniel Molina, all of which explain the reasoning behind the dress code.

Vallet explained that the dress code serves the dual purposes of (1) maintaining "a certain level of dress for the nightclub which makes [the] customers comfortable"; and (2) ensuring that the manner of dress of the patrons does not create potential safety problems for the patrons. He noted that "when large coats and baggy clothing with shirts, shorts and pants hanging down past one's knees began being worn, this presented a real and potentially dangerous safety concern..." That type of clothing "facilitates the

when he accompanied Dunaway to Cowboys, the bouncer informed him that he was not allowing any blacks into the bar and called him a "n----- lover." The bouncer's statement to Hebert, if true, is reprehensible, but does not coincide with any incident pled by Dunaway in the complaint. In fact, Dunaway testified about that particular date in his deposition, but did not testify that the bouncer had made that statement.

possibility of carrying weapons of all kinds into the nightclub." Trent

Moreau, head of security at Cowboys, further explained that

> Clothing that is excessively baggy and long shirt tails...created security risks with regard to weapons, such as guns, knives, etc., alcohol by minors, and contraband being smuggled into the Club. Myself and other security personnel see customers trying to enter with knives in their pockets on a routine basis and those customers are asked to leave them in their vehicles. Cowboys also has routine instances where alcohol is attempted to be smuggled into the nightclub by customers of all ages. Not allowing that type of clothing and dress contained in the dress code made, and currently makes, the customers feel safer and creates the higher level of customer patronage Cowboys seeks to promote.

Vallet also explained that it is routine that:

> customers comply with the dress code upon entering the nightclub, only to untuck their shirt tails, pull their pants down so that their underwear or parts of their bodies are visible, after they are inside. This is the reason that security personnel on the inside of Cowboys keep watch for dress code violations and why the plaintiffs in this law suit would be subject to dress code violations even though they were in compliance upon entry.

Moreau stated that "[w]hen a customer is not willing or able to initially comply with the dress code at the door, that customer is not allowed into the night club...Once inside the Club, if the customer then changes his/her clothing or dress to not be in compliance with the dress code, they are warned. If the customer does not comply, or repeatedly violates the dress code after a warning, he or she is asked to leave."

Moreau also explained several of the club's other policies. He stated that the club "has an operating procedure with regard to not having people congested at its bar where customers order drinks, and requires that once a customer has ordered and obtained his/her drink from the bartender, he/she

No. 10-30663

is to move from the bar when asked to by the bartender or other personnel."

He further explained that

> [C]ustomers that are on the dance floor are encouraged and required to dance and not simply stand. There are several reasons...There is limited space and Cowboys does not want someone on the dance floor standing still while taking up space, where someone else could be dancing. If someone is not dancing and gets bumped, or they bump into someone dancing, that could be a prelude to a fight, which Cowboys wants to avoid. For liability purposes, Cowboys does not want someone standing still on the dance floor when everyone else is moving, which could present a hazard and someone falling.

The foregoing evidence establishes the legitimate, non-discriminatory reasons for the dress code at Cowboys, as well as the club's other policies regarding traffic flow and placement within the club.

## 2. Direct and Rebuttal Evidence as to Pretext

Appellants have presented a number of allegations and proposed evidence that Cowboys uses its dress code and its other policies as a pretext for discrimination against African American patrons. Each Plaintiff alleged particular instances in which their rights under 42 U.S.C. § 1981 were allegedly violated. The district court's Order seems to conclude that Plaintiffs' evidence as to pretext was too vague and general to match up to any of the specific events alleged in the complaint. Because it could not determine that the evidence was "describing the same situations and events as those pled in the petitions," the district court granted summary judgment. We find that the district court erred in viewing the evidence so narrowly. The various pieces of pretext evidence submitted by Plaintiffs, in combination with the contradictory evidence submitted by Cowboys, create a genuine issue of material fact as to pretext, precluding a grant of summary judgment.

14

No. 10-30663

*Plaintiffs' Depositions*

Plaintiffs and Defendants both offered excerpts from several individual Plaintiffs' depositions. The Plaintiffs testify to the reasons that they were denied entry or removed from the club in each instance. Among these reasons are (1) pants that were too baggy; (2) shorts that were too long or too baggy; (3) shirt tails untucked; (4) logos on clothing; (5) clothes were too "urban"; (6) standing too close to the bar; (7) standing too close to or standing on the dance floor without dancing; (8) sitting on the speaker; and (9) involved in or trying to break up an argument or altercation.

Although no Plaintiffs testified that they were given any discriminatory reasons for the actions, several stated that they were given no real explanation by security personnel for being turned away at the door or removed from the club, that they were not permitted to remedy their alleged policy violation, or that even after remedying the violation by changing clothes, they still were not permitted to enter. Several Plaintiffs also alleged that security personnel within the club forcibly untucked their shirts and then used "untucked shirttails" as a reason to remove them. Other plaintiffs testified to instances in which they were denied entry or removed from the club when similarly situated white patrons were permitted to enter or remain. Several Plaintiffs testified to their opinion that the club was enforcing its policies in a discriminatory manner. The combination of this evidence, especially viewed alongside Plaintiffs' other evidence of pretext, is sufficient to create an issue of fact as to whether Cowboys used its policies as a pretext for excluding or removing black patrons.

No. 10-30663

## *Sworn Statement of Jared Cheramie*[9]

Plaintiffs rely heavily on a sworn statement given by Jared Cheramie, who worked as a bouncer for one night at the Cowboys nightclub, and worked for a time at its neighbor club called Yesterdays. Cheramie admits to being implicitly instructed by Cowboys' security manager Trent Moreau not to allow African-Americans to enter the club. He stated that bouncers at Cowboys would "try to not even let [black patrons] in at the door." He stated that African-Americans were turned away at the door for dress code violations even when they were dressed properly, and that some white patrons would be let in even when they were in violation of the dress code. He further stated that Moreau instructed him to "find a reason" to go into the club and kick out black patrons that Cheramie had admitted. He continued: "They would find a reason. If they wanted to kick a black person out, they would find it." Finally, he stated that Moreau told him "we can't have too many" in here, referring to black patrons. Because of these instructions, Cheramie left work four hours early that night.

Cowboys submitted a contradictory affidavit from Cheramie, as well as affidavits from two other Cowboys employees Marcus Boudreaux and Matt Miller. All three swore in the affidavits that they have never witnessed or heard of any discriminatory practices against African-Americans or any other

---

[9] This statement was sworn and taken before a court reporter after the case had been filed, but was never noticed to the Defendant, and hence no defense counsel was present for purposes of objection. Cowboys moved to strike Cheramie's statement because it fails to comply with the standard of FED. R. CIV. P. 56(e) in that it is unauthenticated, it is not attached to an affidavit meeting the Rule 56(e) requirements, and that it is inadmissible hearsay. The district court's Order granting summary judgment did not address the admissibility of Cheramie's sworn statement. Although such a sworn statement is not typical summary judgment evidence, it is not any less reliable than an affidavit submitted at the summary judgment stage. Furthermore, several of Plaintiffs' depositions as well as the FBI document discussed below also attest to Cheramie making similar statements about the night he worked at Cowboys.

race at the Cowboys nightclub. Cheramie did not explain the contradiction between his affidavit and his earlier sworn statement.

Although Plaintiffs presented no evidence to link the particular night that Cheramie worked to any of the events pled by the Plaintiffs in the complaint, it is close enough in time to suggest that Cowboys security personnel may have been under instructions to discriminate against black patrons during the time period including Plaintiffs' allegations. Because the statement directly relates to the material issue of discriminatory intent, and because it is contradicted and creates such a clear dispute, it creates a genuine dispute on an issue of material fact.

### *FBI Document*[10]

Appellants have also submitted a document from an FBI investigation into Dunaway's allegations.[11] Much of the document merely summarizes Dunaway's allegations that the dress code is being applied discriminatorily, or contains heavily redacted excerpts from other individuals' statements, such that its reliability and persuasiveness are questionable. However, other portions of the report bolster Plaintiffs' evidence with regard to pretext.

---

[10] The FBI report submitted by Plaintiffs contains a disclaimer: "This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency." It concludes by noting that the matter is being held in a pending inactive status until the DOJ makes a determination regarding further investigation of the matter. Although Defendants rely on this disclaimer to argue against the admissibility of the report, the disclaimer does not prevent a court from considering the contents of the report once it has been submitted. The fact that the DOJ has not launched an investigation also does not change the fact that the report raises factual allegations that create a genuine issue of fact as to the pretext of Cowboys' alleged legitimate, non-discriminatory reasons.

[11] Cowboys moved to exclude the report on the basis that it was redacted such that it was not possible to determine who made the statements contained therein, and that it was hearsay and was not properly authenticated. The District Court did not rule on this motion, and did not address the FBI document in its Order on summary judgment. The FBI document is admissible under the government reports exception to the hearsay rule under FED. R. EVID. 803(8).

No. 10-30663

For example, the report states that two FBI agents, a black male and a Hispanic female with a light complexion, entered the night club on November 18, 2006 wearing recording devices, and no attempt was made to remove them from the club.  It states that on the same night,

> a surveillance was conducted in the vicinity of the front entry where several black patrons, male and female, were observed being turned away at the door during the 90-minute period.  It should be noted that nearly all of the black patrons who were turned away were dressed in conservative clothing suitable for wear in a church setting.  Some white patrons were also turned away, but at a far lesser rate than the black patrons.  Nearly all the denied entry incidents appeared to be based on baggy clothing and in some cases, the clothing was pleated dress slacks worn by shorter black males.

The report does not opine on why the black patrons were turned away, and does not purport to have knowledge of any discussions or instructions that occurred at the door of the club that night.  However, it does indicate that black patrons may have been turned away more frequently than white patrons and turned away when they were dressed appropriately.  Even though none of the Plaintiffs in this case presented any allegations with regard to November 18, 2006 in particular, the alleged events took place in the very close time period of January through November of 2006.  The file also contains statements that appear to have been made by Cheramie, along the lines of what he said in his sworn statement also submitted by the Plaintiffs.

*Third Party Affidavits*[12]

Plaintiffs also presented affidavits of 12 third party witnesses. Each of these individuals testify to particular instances in which they witnessed one or more of the Plaintiffs denied entry to Cowboys, or removed from the club after entering.

In most cases, the affiants give only a general idea of the frequency and the time frame in which the events occurred, such as "on two occasions since March 2006" or "on at least four occasions before and after March of 2006" or "on numerous occasions after March of 2006." Several of the affiants also attested to statements such as: "I have personally witnessed Cowboys' security not allow black people in the club who were dressed in dress slacks and dress shirts. I have personally witnessed the Cowboy's security kick out black persons for dress code violations who were dressed appropriately." Several testified to additional specific instances, not necessarily alleged in Plaintiffs' petitions, in which they witnessed one or more Plaintiffs or other black patrons denied entry or removed from the club when similarly situated white patrons were permitted to enter or remain.

While some of the affidavits are fairly specific in terms of the dates and details of the events described therein, none of the affiants describe any events that can clearly be linked to the events alleged in the Plaintiffs' petitions. It appears that the district court relied heavily on this purported disconnect to conclude that Plaintiffs had failed to present sufficient evidence

---

[12] Defendants filed a pending motion to exclude all evidence of additional acts of discrimination beyond the specific ones alleged by Plaintiffs in their petitions. Although the district court did not rule on this motion before issuing its Order on summary judgment, it appears that it concluded that the additional evidence did not support the specific allegations in the Plaintiffs' petitions, and thus did not consider that in the larger context of all of Plaintiffs' evidence, the additional acts support that there is a material fact issue as to pretext. The district court noted that the affidavits are "vague and lack specificity" such that it could not "conclude whether the affiants are describing the same situations and events as those pled in the petitions."

No. 10-30663

of pretext with regard to their particular allegations. However, the affidavits describe instances that are very close in time frame to those alleged by the Plaintiffs, and in some cases refer to the same month of a Plaintiff's allegations. In this context concerning casual attendances of a nightclub, especially when several of the affiants clearly stated that they attend the nightclub regularly, it is perhaps unrealistic to require third party affiants to recall the exact day and time on which certain events allegedly occurred in the context of this case. Taken in consideration with the other pieces of evidence, these affidavits create a fact issue as to pretext.

### *Cowboys' Evidence Rebutting Pretext*

Defendants have submitted evidence directly contradicting Appellants' argument that the dress code and other policies were pretext for discrimination.

Vallet's affidavit stated:

> There has never been an instance reported to me of an employee of Cowboys engaging in a selective application of the dress code or any other rule regarding the nightclub's operations, such that African Americans or persons of any race are excluded from the club based upon their race. There are routine instances where white, African American, or persons of any other race or gender have been turned away at the nightclub's door or asked to leave due to noncompliance with the dress code or the person has been barred from the nightclub because of prior incidents of fights or non-cooperation with Cowboys' personnel.

Moreau also stated that:

> There has never been an instance where a Cowboys security person asked someone to leave for a dress code violation which was not warranted, or has used the dress code as an excuse, without justification, to remove anyone of any race or national origin from the Club to my knowledge.

Withers' affidavit also stated that:

20

No. 10-30663

> I have never witnessed, or heard of anyone working for Cowboys
> being instructed to not let in, kick out or discriminate against
> African-Americans or any other race…I have never told anyone or
> heard anyone say that Cowboys discriminates against African-
> Americans or any race.  The times I have worked at Cowboys,
> their policies and dress code were enforced fairly and equally to
> all persons entering or patronizing the club.

As discussed above, Defendants also presented the affidavits of Jared Cheramie, Marcus Boudreaux, and Matt Miller, who all worked as bouncers during the relevant time frame, and who all testified that they had never witnessed or heard of any discriminatory practices at Cowboys, or anyone being treated differently either at the door or inside of Cowboys based on their race.  Defendant's rebuttal evidence directly contradict the depositions, affidavits, and other evidence offered by Plaintiffs on the issue of pretext.  Thus, there is a clear conflict and a genuine issue of material fact on whether the dress code and other club policies were used as a pretext to exclude African Americans from Cowboys.

### *Genuine Issue of Material Fact on Pretext*

The district court's job was not to weigh the conflicting evidence and determine which side was more persuasive, but only to determine whether there was an issue of fact to be resolved by the jury.  The whole of Plaintiffs' evidence as to discrimination and pretext, combined with the contradictory affidavits submitted by Defendants, creates a genuine issue of fact as to Cowboys' motivations in denying Plaintiffs entry to or removing them from the nightclub.  Accordingly, we find that the district court erred in granting summary judgment to Cowboys on Plaintiffs' 42 U.S.C. § 1981 claims.

### C.

Plaintiffs' final issue on appeal is the argument that the district court erred in dismissing the pendent state law claims.

21

No. 10-30663

When a court dismisses all federal claims in a removed case before trial, it may dismiss any pendent state law claims. These claims are typically dismissed without prejudice. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed. 218(1966); *St. Germain v. Howard*, 556 F.3d 261, 263-64 (5th Cir. 2009); *Lopez v. Lone Star Beef Processors LP*, 145 Fed.Appx. 473, 475 (5th Cir. 2005). The decision to dismiss the claims is within the district court's discretion. *St. Germain*, 556 F.3d at 263-64; *Lone Star Beef*, 145 Fed.Appx. at 475.

The district court dismissed the state law claims with prejudice, and did not state its reasons for doing so. Both parties have interpreted the court's Order as a holding that the state law claims failed to survive summary judgment. If the district court intended to dismiss the state law claims on the merits, then it did not comply with FED. R. CIV. P. 52(a) by stating its conclusions of law on the state law claims. The dismissal with prejudice affects substantial rights of the Appellants, as it operates to prevent them from raising the state law claims in subsequent litigation. FED. R. CIV. P. 61.

Appellants argue that the district court erred by analyzing the claims under the wrong standard, by analogy to 42 U.S.C. § 1981 instead of 42 U.S.C. §2000a, and failed to provide written reasons for the dismissal. Title II prohibits discrimination or segregation in places of public accommodation, while 42 U.S.C. § 1981 prohibits discrimination in the making and enforcement of contracts.

As with a 42 U.S.C. § 1981 claim, a plaintiff can use either direct or circumstantial evidence to prove a case of Title II discrimination. *See Fahim v. Marriott Hotel Services, Inc.*, 551 F.3d 344, 349 (5th Cir. 2008).[13] The standard for a prima facie case in a Title II case differs slightly from that in a

---

[13] As noted above, Plaintiffs failed to present any direct evidence of discrimination in relation to the allegations in their pleadings.

No. 10-30663

42 U.S.C. § 1981 case.[14]  Under either standard, however, the claim is subject to the same burden-shifting analysis as a 42 U.S.C. § 1981 claim.  The defendant may present legitimate, non-discriminatory reasons for its actions, which the plaintiff may then rebut by presenting evidence that the proffered reason is pretext for discrimination.

Because the court did not state the reason for dismissing the claims, and there is a genuine issue of material fact as to whether Cowboys' actions were pretextual, we reverse the district court's dismissal of the state law claims and remand for further proceedings in accordance with our holding.

## IV.

We REVERSE and REMAND the judgment of the District Court.

---

[14] A plaintiff may establish a prima facie case of discrimination in public accommodation by showing that (1) he is a member of a protected class; (2) he attempted to contract for the services of a public accommodation; (3) he was denied those services; and (4) those services were made available to similarly situated persons outside his protected class. *Fahim*, 551 F.3d at 350.  Some courts have applied a modified test, in which the fourth element of the prima facie case requires proof that either (a) the services were made available to similarly situated persons outside the plaintiff's protected class, or (b) the plaintiff "received services in a markedly hostile manner and in a manner in which a reasonable person would find objectively discriminatory." *Id.* n. 2 (quoting *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001)).  Although we have not decided whether the modified test need be applied in Title II cases, in this case it appears that the Plaintiffs' allegations would state a prima facie case under either test.